J-S49031-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: A.B., MOTHER | : | |
| | : | No. 1052 EDA 2019 |

Appeal from the Order Entered March 5, 2019
in the Court of Common Pleas of Philadelphia County Family Court at
No(s): CP-51-DP-0000357-2013

BEFORE: BENDER, P.J.E., STABILE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED OCTOBER 23, 2019**

Appellant, A.B. ("Mother"), files this appeal from the Order entered on March 5, 2019, in the Court of Common Pleas of Philadelphia County granting the petition of the Philadelphia Department of Human Services ("DHS") and awarding subsidized permanent legal custody of her dependent daughter, A.A., born in September 2004 ("Child"), to paternal aunt, C.A. ("Paternal Aunt") pursuant to the Juvenile Act, 42 Pa.C.S.A. § 6351.[1] After review, we affirm the trial court's Order.

Relevant to the instant appeal, after previously being adjudicated dependent on March 6, 2013, Child was reunified with Father in late 2013.

---

[*] Former Justice specially assigned to the Superior Court.
[1] Child's father, C.A. ("Father"), supported the granting of permanent legal custody. Notes of Testimony ("N.T."), 3/5/19, at 13-14. Father did not file an appeal and is not a party to the instant appeal.

Court supervision subsequently was terminated, and the dependent petition was discharged on April 29, 2014.[2] **See** DHS Exhibit 1; **see also** N.T., 3/5/19, at 6-8.

The case, however, was re-opened on July 20, 2015, due to additional allegations of sexual abuse. N.T., 3/5/19, at 8. As a result, an OPC [Order of Protective Custody] was obtained on July 21, 2015, and Child was placed in foster care. Child was adjudicated dependent on October 22, 2015.[3]

The trial court held permanency review hearings at regular intervals between January 21, 2016, through July 17, 2018. Throughout these hearings, the court maintained Child's commitment. The court additionally maintained Child's placement in foster care. However, at the Permanency Review Hearing on April 3, 2017, it was noted that Child had been residing with Paternal Aunt since February 8, 2017, and was to be placed in kinship foster care with Paternal Aunt. **See** DHS Exhibit 1; **see also** Permanency Review Order, 4/3/17.

---

[2] While initially left in Mother's physical custody, despite adjudication, Child was removed from Mother's care on March 13, 2013, due to allegations of physical and emotional abuse, as well as sexual abuse by a biological brother. N.T., 3/5/19, at 6-7; **see also** DHS Exhibit 1.

[3] Mother appealed this dependency adjudication which was affirmed by a prior panel of this Court on February 14, 2017. **See In the Interest of: AI.A and AS.A**, 161 A.3d 377 (Pa.Super. 2017) (unpublished memorandum).

DHS filed a petition for permanent legal custody on November 1, 2018.[4] A hearing on this petition was held on March 5, 2019. Child was represented by legal counsel, referred to as a child advocate, James Martin, Esquire, who participated in the proceedings.[5] In support thereof, DHS presented the testimony of Tamika Palmer, CUA case manager. Next, the Child Advocate presented the testimony of Mother as on cross-examination. Then Mother, represented by counsel, testified on her own behalf. Additionally, the parties stipulated that Jenna Cotton, Child's CCTC trauma therapist, "would testify that the CCTC sessions are for [Child], they are not mental health treatment

---

[4] A copy of this petition was not included as part of the certified record.

[5] This Court extended the requirements of **In re Adoption of L.B.M.**, 639 Pa. 428, 161 A.3d 172 (2017), and its progeny to dependency actions generally. **See In re Adoption of L.B.M.**, 639 Pa. 428, 432, 441-42, 161 A.3d 172, 175, 180 (2017) (plurality) (stating that, pursuant to 23 Pa.C.S.A. § 2313(a), a child who is the subject of a contested involuntary termination proceeding has a statutory right to counsel who discerns and advocates for the child's legal interests, defined as a child's preferred outcome); **see also In re T.S.**, ___Pa. ___, 192 A.3d 1080, 1089-90, 1092-93 (2018) (finding the preferred outcome of a child who is too young or non-communicative unascertainable in holding a child's statutory right to counsel not waivable and reaffirming the ability of an attorney-guardian *ad litem* ("GAL") to serve a dual role and represent a child's non-conflicting best interests and legal interests); **see also In re J'K.M.**, 191 A.3d 907 (Pa.Super. 2018) (reversing order denying appointment of a separate counsel for dependency proceedings where there was a conflict between the child's best interests and legal interests). We note, however, our recent opinion in **In re: Adoption of K.M.G.**, 2019 PA Super 281 (*en banc*) (filed September 13, 2019), holding that this Court has the authority only to raise *sua sponte* the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation.

for [M]other, and that [M]other has a separate -- they have had conversations about [M]other's separate mental health, which, as previously testified, has not occurred." N.T., 3/5/19, at 43. The court further interviewed Child *in camera*.[6]

By order entered March 5, 2019, the court ruled out reunification and adoption as viable goals and found it in the best interest of Child to grant subsidized permanent legal custody to Paternal Aunt.[7] The court further terminated court supervision and discharged the commit and petition. Significantly, in rendering its decision, the court stated,

> **THE COURT**: All right. On the issue of permanent legal custody of the child, I've had this case from the beginning. There's a pattern of [M]other's behavior, and that is that she's not in compliance.
>
> She has failed to go for any mental health treatment to address the issues that originally brought the child into care, and that is the sexual abuse that occurred against the child while the child was in the mother's care.
>
> She's conveniently found a way either to not have the documents with her or, if she does bring in a whole box of documents, they have nothing to do with the case, and they never get introduced.
>
> So, it's an issue of [M]other not actually fixing the issues that brought this case into care and fixing the issues that would

---

[6] It is noted that, while the parties were excused while the court interviewed Child, counsel were present. N.T., 3/5/19, at 29. We observe that, in her brief, Mother incorrectly suggests that Child did not testify. Mother's Brief at 9.

[7] This order memorialized the decision of the court placed on the record at the conclusion of the hearing on March 5, 2019. N.T., 3/5/19, at 44.

put herself in a position to care for [Child]. The petition for permanent legal custody--

. . .

**THE COURT**: --is granted.

*Id.* at 44.

On April 4, 2019, Mother, through appointed counsel, filed a timely notice of appeal. Mother failed to file a concurrent concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). Rather, Mother filed a Concise Statement of Matters Complained of on Appeal pursuant to Pa.R.A.P. 1925(b) on May 2, 2019.[8] Thereafter, the trial court entered an order on May 16, 2019 directing Appellant to file a Supplemental/Amended Concise Statement of Errors Complained of on Appeal concisely identifying each ruling or error that the Appellant intends to challenge with sufficient

---

[8] While Mother violated Pa.R.A.P. 1925(a)(2)(i) by failing to file a concise statement of errors complained of on appeal concurrently with her notice of appeal, as Mother filed a Rule 1925(b) statement approximately one month later and a response to the trial court's subsequent order, and there is no assertion of any prejudice, we do not quash or dismiss his appeal. *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa.Super. 2009) (holding that failure to file a Rule 1925(b) statement concurrently with a children's fast track appeal is considered a defective notice of appeal, to be disposed of on a case-by-case basis, but did not result in dismissal or quashal where there was no prejudice to the other parties as a result of the late filing); *cf. Mudge v. Mudge*, 6 A.3d 1031 (Pa.Super. 2011) and *J.M.R. v. J.M.*, 1 A.3d 902 (Pa.Super. 2010) (failure to file a Rule 1925(b) statement, when ordered by the Superior Court, will result in a waiver of all issues on appeal); *J.P. v. S.P.*, 991 A.2d 904 (Pa.Super. 2010) (finding that the appellant waived issues for appeal by failing to comply with the trial court's order directing her to file a Rule 1925(b) statement within 21 days).

detail to identify all pertinent issues for the court. On June 6, 2019, Mother

filed a Supplemental Concise Statement of Matters Complained of on Appeal.[9]

The trial court then filed its Rule 1925(a) Opinion on June 12, 2019, in which

it addressed the issues raised by Mother.

On appeal, Mother raises the following issues for our review:

1. Did the court below err in finding that DHS had met its burden to prove grounds for goal change and Permanent Legal Custody?

2. Did the court below err in finding that DHS had met its burden to prove that goal change and Permanent Legal Custody would be in the child's best interests?

3. Did the court below err in denying Due Process and Equal Protection of Law to [Mother], as guaranteed by the Constitutions of the United States and of the Commonwealth of Pennsylvania?

Mother's Brief at 4 (suggested answers omitted).

We address Mother's first two issues together as they are interrelated.

Our standard of review from an order granting PLC is abuse of discretion.

When reviewing such a decision[,] we are bound by the facts as found by the trial court unless they are not supported in the record. Furthermore, in a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interest and not those of his or her parents.

_____

[9] Notably, Mother incorporated the claims which she included in her original Rule 1925(b) Statement. Supplemental Concise Statement of Matters Complained of on Appeal, 6/6/19, at ¶1. She further averred that the issues raised are "sufficiently clear to advise the trial court; if not, Appellant requests the trial court provide guidance as to what more specific points need to be presented by Appellant." *Id.* at ¶4. This Court is unaware of any further action and/or challenge by the trial court.

At each review hearing concerning a child who has been adjudicated dependent and removed from the parental home, the trial court must consider: the continuing necessity for and appropriateness of the placement; the extent of compliance with the service plan developed for the child; the extent of progress made towards alleviating the circumstances which necessitated the original placement; the appropriateness and feasibility of the current placement goal for the child; and, a likely date by which the goal for the child might be achieved.

These statutory mandates clearly place the trial court's focus on the best interests of the child.

In addition[, a]lthough bound by the facts as found by the trial court and supported by the record, we are not bound by the trial court's inferences, deductions, and conclusions therefrom; we must exercise our independent judgment in reviewing the court's determination, as opposed to its findings of fact, and must order whatever right and justice dictate. We review for an abuse of discretion. Our scope of review, accordingly, is of the broadest possible nature. It is this Court's responsibility to ensure that the record represents a comprehensive inquiry and that the hearing judge has applied the appropriate legal principles to that record. Nevertheless, we accord great weight to the court's fact-finding function because the court is in the best position to observe and rule on the credibility of the parties and the witnesses.

*In re K.J.*, 27 A.3d 236, 241 (Pa.Super. 2011) (internal citations omitted);

*see also In re S.B.*, 943 A.2d 973, 982 (Pa.Super. 2008).

The Juvenile Act, 42 Pa.C.S.A. Section 6351, provides, in relevant part:

**(a) General rule.--**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

. . .

(2) Subject to conditions and limitations as the court prescribes transfer temporary legal custody to any of the following:

> > (i) Any individual resident within or without this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.
>
> > . . .
>
> **(f.1)  Additional  determination.--**Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:
>
> > (1)  If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.
>
> > (2)  If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.
>
> > (3)  If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare of the child.
>
> > (4)  If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(5) If and when the child will be placed in another planned permanent living arrangement which is approved by the court, the following shall apply:

. . .

**(g) Court order.--**On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

As further explained by this Court in **In re S.H.**, 71 A.3d 973 (Pa.Super. 2013), *appeal denied*, 622 Pa. 761, 80 A.3d 778 (2013):

. . . In Pennsylvania, a juvenile court may award permanent legal custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act. This is an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated. [**See In re H.V.**], 37 A.3d 588, 589 (Pa.Super. 2012). The custodian is typically provided a financial subsidy for the child by the local county children and youth agency. The subsidy component is generally an integral component when permanent legal custody is considered a viable option.

A trial court may consider permanent legal custody, upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if subsidized permanent legal custodianship (SPLC) were granted. [**See In re S.B.**, 943 A.2d 973, 983-84 (Pa.Super. 2008)]. Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. [**See id.**] In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare. [**See id.; see also** 42 Pa.C.S.A. § 6351(f.1)].

. . .

- 9 -

In those cases where reunification is not appropriate, adoption is viewed as providing the greatest degree of permanence. In some situations, however, adoption may not be a realistic or appropriate option. For example, some older children, who are well familiar with and have affection for their birth parents, may object to termination proceedings. There are also special needs children for whom placement in an adoptive home is extremely difficult. Consequently, in those cases, attention may be focused on alternative permanency options such as guardianship, or custodial arrangements (PLS), preferably with relatives.

*In re S.H.*, 71 A.3d at 977-78 (footnotes omitted).

We further stated,

A trial court must utilize the highest civil standard of proof, "clear and convincing evidence," when addressing a petition to terminate parental rights. When a trial court considers and grants a permanent legal custody order, it does not engage in this heightened review process. "Upon filing a SPLC petition, DHS is required merely to prove that reunification or adoption is not best suited to the child's safety, protection and physical, mental and moral welfare." [*In re B.S.*], 861 A.2d 974, 977 (Pa.Super. 2004). Clearly, the procedural and substantive safeguards utilized to protect the rights of parents in termination cases are not applicable in PLC cases.

*Id.* at 979-80 (footnote omitted).

In support of its determination that granting permanent legal custody was in Child's best interests and best suits the protection and physical, mental and moral welfare of Child, the trial court stated,

The Pennsylvania Juvenile Act, as amended to reflect the principles of the Federal Adoption and Safe Families Act (ASFA)[,] which focuses on safety and permanency as the paramount concerns in planning for dependent children, ranks the permanency options for children using a hierarchical priority. The permanency options are listed first to last and each preceding option must be ruled out before the next can be chose[n] as a viable permanency option. The Superior Court detailed this hierarchy in its decision in [*In Re: B.S.*], 861 A.2d 974 (Pa.Super.

2004). Pursuant to the hierarchy of permanency option[s], the option of "placement with a legal custodian" is listed third. Once reunification and adoption are ruled out, the third preferred permanency option is awarding Permanent Legal Custodianship.

When a trial court considers and grants a permanent legal custody order, it does not engage in the heightened review process of clear and convincing evidence; instead, the Department of Human Services (DHS) is required merely to prove that reunification or adoption is not best suited to the child's safety, protection and physical, mental and moral welfare. [**In re S.H.**, 71 A.3d 973 (Pa.Super. 2013), appeal denied, 622 Pa. 761, 80 A.3d 778 (2013)]. The concept of "goal change" is consistent with the statute which requires the trial court, at the conclusion of a permanency hearing in a child dependency proceeding, to order the continuation, modification, or termination of placement or other disposition which is best suited to the safety, protection and physical, mental, and moral welfare of the child; an order to continue, modify, or terminate the current placement, as required by the statute, is synonymous with a decision to continue or change the permanency plan goal. 42 Pa.C.S.A. § 6351(g).

Mother alleges the trial court erred when it found that DHS had met its burden to prove grounds for goal change and finding that it was in [] Child's best interest to grant [] Paternal Aunt permanent legal custody. This [c]ourt disagrees.

Tamika Palmer, CUA Case Manager, provided the [c]ourt with competent and persuasive evidence that reasonable efforts were made by the Agency to give Mother the avenue for reunification with [] Child, however, Mother failed to use the referrals and resources provided to her. Mother, on the other hand, provided testimony that was not persuasive and found to be incredible by this [c]ourt. This [c]ourt is not persuaded that she could function in a caregiving role of a parent to provide safety and permanency to this [c]hild. Further, Ms. Palmer testified [] Child would like to remain with her [p]aternal [a]unt, and she is in agreement with [] Paternal Aunt being granted Permanent Legal Custody because she does not want to live with her [m]other but wants to maintain a relationship with her. Mother currently has biweekly supervised visits at the Agency, and biweekly community visits. Ms. Palmer recommended visits with Mother every Sunday 10 a.m. to 2 p.m. and visits with Father every Sunday 3 p.m. to 7 p.m. These visits would occur at [] Child's discretion, although the schedule would be maintained.

- 11 -

The [c]ourt heard evidence that was sufficient to support the finding that the best interests of this fourteen-and[-]one[-]half[-]year-old [c]hild, who was adjudicated dependent and removed from the parental home due to Mother's inadequate supervision and mental health issues, was to give her permanency and her [p]aternal [a]unt was willing to permanently care for her.

The [c]ourt heard credible, persuasive evidence and made statutory findings in determining whether reunification, adoption or placing [] Child with a legal guardian was best suited to [] Child's safety, protection, and physical, mental and moral welfare. This [c]ourt found that reunification of [Child] with her [m]other was not a viable option because Mother has failed to adequately care for [] Child's needs and has a history of mental health issues. [] Child has been residing with her [p]aternal [a]unt for at least six months. She is doing well with her, and [] Child is safe. The parental rights of the parents were not terminated, and Mother was awarded supervised visitation on a weekly basis for 1 to 2 hours at community locations or in [P]aternal [A]unt's home. Mother can make a request for a visit within 24 hours, and Paternal Aunt will transport [] Child to visit with Mother. Therefore, pursuant to 42 Pa.C.S.A. § 6351 (a)(2.1) and 55 Pa. Code 3130.74, this disposition best suits the protection and physical, mental and moral welfare of [] Child[,] and Paternal Aunt was granted Permanent Legal Custody.

Trial Court Opinion, 6/12/19, at 15-18.

Mother, however, argues the assertion that she failed to make use of the services afforded her is false and belied by DHS's own acknowledgment of Mother's achievements. Mother's Brief at 12. Mother states, "The list of efforts made by Mother – explicitly found by the trial court – even without consideration of any of the testimony of Mother regarding her efforts, directly contradicts the conclusion by the court . . . that 'Mother failed to use the referrals and resources provided to her.'" *Id.*

Further, Mother contends that DHS failed to prove that granting permanent legal custody is in Child's best interests. *Id.* at 13. Significantly,

Mother maintains that Child did not testify and provide support and credence to the assertions that she is happy with Paternal Aunt. *Id.* at 13-14.

A review of the record supports the trial court's award of permanent legal custody. The record reveals that Mother failed to complete the established objectives aimed at reunification, and that Child, while content with her custodian, desired to continue a relationship with Mother and was not in favor of adoption.

CUA case manager, Tamika Palmer, indicated that Mother's objectives included:  to engage in mental health treatment, to complete parenting classes, to attend visitation, to address reunification, to engage in age-appropriate communication with Child, to address concerns for sexual abuse allegations, and to attend caregiver sessions. N.T., 3/5/19, at 17.  Ms. Palmer confirmed that Mother was aware of these objectives. *Id.* at 9, 18-19.  Mother further acknowledged awareness of her objectives.  *Id.* at 31.  Ms. Palmer testified that Mother's compliance with her single case plan objectives was "moderate."  *Id.* at 18.  Ms. Palmer conceded that Mother regularly visited Child and completed parenting classes.  *Id.* at 14, 19-20.  However, Mother's completion of parenting classes did not alleviate any concerns as to her parenting.  *Id.* at 19-20.  Critically, Ms. Palmer reported that Mother failed to

complete mental health treatment.[10, 11] *Id.* at 15. Additionally, although Child had been attending CCTC since at least 2015, Mother did not begin participating in caregiver sessions until November 2018. While Mother began attending consistently in early 2019, by the time of the hearing in March 2019, she had not been attending due to a change in her work schedule. *Id.* at 9-10, 15, 25. Notably, Ms. Palmer opined that Mother was not in a position to have Child live with her, explaining this was "due to [Mother]'s failure to address her own mental health" and the fact that Child is happy with Paternal Aunt. *Id.* at 20-21.

Moreover, and more importantly, Child is doing well in Paternal Aunt's home, where she has resided for two years. *Id.* at 12, N.T., 3/5/19 (Child-sealed), at 4. Paternal Aunt is meeting all of Child's needs and Child is happy. N.T., 3/5/19, at 12-13, 21. As explained by Child, Paternal Aunt's home is where she feels "most comfortable." N.T., 3/5/9 (Child-sealed), at 5. As such,

---

[10] Ms. Palmer explained that mental health treatment was an objective "[b]ecause [M]other disclosed she has her own past trauma, and [M]other failed to acknowledge [Child] was sexually abused while [in] her care, initially." N.T., 3/5/19, at 8-9. Ms. Palmer indicated that Mother's unwillingness to acknowledge Child's abuse remained an ongoing concern. *Id.* at 9, 11. Ms. Palmer further confirmed that, not only did Mother have a history of abuse, but Mother had a prior mental health diagnosis of adjustment disorder with anxiety. *Id.* at 15-16.

[11] Ms. Palmer indicated that Mother recently raised issues related to her insurance coverage in explaining her failure to engage in treatment, but offered no explanation or excuse prior. *Id.* at 16. Mother, however testified that she attended therapy from 2015 and 2016 and then stated that she attended "on and off" and has been "compliant the whole time." *Id.* at 33. She further stated that she has utilized the CTCC caregiver sessions as individual therapy. *Id.* at 34-35.

Child is in favor of permanent legal custody. N.T., 3/5/19, at 13; **see also** N.T., 3/5/19 (Child-sealed), at 7. While Child would like to maintain a relationship with Mother, Child would like to continue residing with Paternal Aunt. **Id.** at 12-13; 4-5.

Hence, we discern no abuse of discretion. The evidence supports the court's finding that reunification or adoption is not best suited to the child's safety, protection and physical, mental and moral welfare and the grant of permanent legal custody.

Turning to Mother's third issue as to due process and equal protection,[12] we first address DHS's argument in its brief that Mother's argument is vague and imprecise and lacks the appropriate citation to supporting authority as required by Pa.R.A.P. 2119(a). DHS's Brief at 35-36.

We note with disapproval the lack of precision, clarity, and citation to authority in Mother's argument which results in her waiver of this claim.[13]

---

[12] As Mother failed to raise any issue as to equal protection in her Rule 1925(b) statement, such a challenge would be waived. **See Krebs v. United Refining Co.**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that a failure to preserve issues by raising them both in the concise statement of errors complained of on appeal and statement of questions involved portion of the brief on appeal results in a waiver of those issues).

[13] **See** Pa.R.A.P. 2101 (stating, "Briefs and reproduced records shall conform in all material respects with the requirements of these rules as nearly as the circumstances of the particular case will admit, otherwise they may be suppressed. . . .); **see also In re W.H.**, 25 A.3d 330, 339 n.3 (Pa.Super. 2011), *appeal denied*, 611 Pa. 643, 24 A.3d 364 (2011) (quoting **In re A.C.**, 991 A.2d 884, 897 (Pa.Super. 2010)) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to

- 15 -

Nevertheless, we note that even if Mother's claim were properly preserved, it would be without merit.

It is well-settled that infringement on parental rights implicates a natural parent's Fourteenth Amendment right to due process. *See In the Interest of A.P.*, 692 A.2d 240, 242 (Pa.Super. 1997) (stating that natural parents have a "fundamental liberty interest . . . in the care, custody, and management of their children") (citing *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 1394, 71 L.Ed.2d 599 (1982)). "It has long been established that the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause of the United States Constitution." *In re S.H.*, 71 A.3d at 979–80 (citing *Hiller v. Fausey*, 588 Pa. 342, 358, 904 A.2d 875, 885 (2006), *cert. denied*, 549 U.S. 1304, 127 S.Ct. 1876, 167 L.Ed.2d 363 (2007).

"Due process requires nothing more than adequate notice, an opportunity to be heard, and the chance to defend oneself in an impartial tribunal having jurisdiction over the matter." *In re J.N.F.*, 887 A.2d 775, 781 (Pa.Super. 2005). "Due process is flexible and calls for such procedural protections as the situation demands." *In re Adoption of Dale A., II*, 683 A.2d 297, 300 (Pa.Super. 1996) (citing *Mathews v. Eldridge*, 424 U.S. 319,

---

develop the issue in any other meaningful fashion capable of review, that claim is waived."); *see also In re M.Z.T.M.W.*, 163 A.3d 462, 465-66 (Pa.Super. 2017); *see also* Pa.R.A.P. 2119(a), (b), (c); *see also* Pa.R.A.P. 2132.

334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)). Similarly, equal protection requires that "like persons in like circumstances will be treated similarly." ***In re Adoption of C.J.P.***, 114 A.3d 1046, 1057 (Pa.Super. 2015) (citing ***Markovsky v. Crown Cork & Seal Co.,*** 107 A.3d 749, 766 (Pa.Super. 2014).

Mother notes the fundamental nature of the relationship between parents and children and argues that the goal change "deprived Mother of her constitutional rights." Mother's Brief at 15. As Mother participated in the hearing and was represented by counsel, who had to opportunity to and, in fact, presented evidence and cross-examined witnesses on Mother's behalf, Mother's argument fails.

Accordingly, for the reasons stated, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/23/19