# IN THE SUPREME COURT OF IOWA

No. 19–1852

Submitted January 19, 2022—Filed June 17, 2022
Amended August 11, 2022

**LARRY C. BEVERAGE,** Individually and as Personal Representative of the Estate of CHARLES E. BEVERAGE, Deceased, and **LINDA K. ANDERSON,** and **BONNIE K. VALENTINE,**

Appellants,

vs.

**ALCOA, INC.,** a Pennsylvania Corporation, **IOWA-ILLINOIS TAYLOR INSULATION, INC.,** a successor in interest to **IOWA ILLINOIS THERMAL INSULATION, INC.,** an Iowa Corporation,

Appellees.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Scott County, Patrick A. McElyea, Judge.

Plaintiffs appeal from district court's grant of summary judgment in favor of defendants in asbestos litigation under statutory limitation of liability. **COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED.**

Oxley, J., delivered the opinion of the court in which Christensen, C.J., and Appel and McDonald, JJ., joined. Waterman, J., filed a dissenting opinion, in which Mansfield and McDermott, JJ., joined.

Lisa W. Shirley (argued) of Dean Omar Branham Shirley, LLP, Dallas, Texas, and James H. Cook of Dutton, Daniels, Hines, Kalkhoff, Cook & Swanson, PLC, Waterloo, for appellants.

Kevin P. Horan (argued), Douglas M. Sinars, and Owen Blood of Sinars Slowikowski Tomaska, LLC, Chicago, Illinois, for appellee Iowa-Illinois Taylor Insulation, Inc.

Robert M. Livingston (argued) and William R. Hughes, Jr., of Stuart Tinley Law Firm, LLP, Council Bluffs, for appellee Arconic, Inc., f/k/a ALCOA, Inc.

Matthew McKinney and Thomas Story of Brown, Winick, Graves, Gross & Baskerville, P.L.C., Des Moines, and Mark Behrens of Shook, Hardy & Bacon L.L.P., Washington, D.C., for amici curiae Iowa Association of Business and Industry, Iowa Insurance Institute, NFIB Small Business Legal Center, and Coalition for Litigation Justice, Inc.

**OXLEY, Justice.**

In 2017, the Iowa General Assembly followed the lead of several other states in enacting detailed tort reform related to asbestos litigation, codified in three new chapters of the Iowa Code: chapters 686A, 686B, and 686C. As a general matter, the legislation requires plaintiffs bringing asbestos lawsuits to identify actual or potential claims they may have against an asbestos manufacturer's section 524(g) bankruptcy trust. This alerts defendants in the asbestos litigation to other possible sources of recovery for the plaintiff that can be used as a setoff against any recovery ordered in the litigation. The legislation also requires a plaintiff to file detailed medical and background information with their initial pleading to prioritize asbestos claims by plaintiffs with current physical conditions over those by plaintiffs who are not yet sick.

Iowa also added a provision not found in any other state's legislation: "A defendant in an asbestos action or silica action shall not be liable for exposures from a product or component part made or sold by a third party." Iowa Code § 686B.7(5) (2018). In this asbestos case, the district court read section 686B.7(5) to limit liability to manufacturers of the offending asbestos-containing product and granted summary judgment on plaintiffs' premises liability claims against Alcoa and on their products liability claims against Iowa-Illinois Taylor Insulation for supplying, but not manufacturing, the asbestos-containing insulation in the Alcoa plant.

On our review of the statute, we conclude the district court failed to appreciate the legal significance of the legislature's use of the phrase "product or

component part made or sold by a third party" to reference a products liability defense known as the "component parts defense," or "bare metal defense" as described in the specific context of asbestos litigation. Properly considering the context of the provision, we conclude section 686B.7(5) does not apply to the claims against Alcoa or Iowa Illinois-Taylor Insulation, and we reverse the district court's grant of summary judgment.

**I. Background Facts and Proceedings.**

Charles Beverage was diagnosed with malignant mesothelioma in September 2015 and passed away from the disease on October 7, 2015. His children, Larry Beverage, Linda K. Anderson, and Bonnie K. Valentine, and the executor of his estate, Larry Beverage, (collectively referred to as "Beverage") filed this action against two defendants, Alcoa, Inc.[1] and Iowa-Illinois Taylor Insulation, Inc. (IITI), on September 27, 2017.[2] In an amended petition, Beverage alleged claims for negligence, premises liability, strict liability, breach of express and implied warranties, and loss of consortium.

The claims stem from Charles's exposure to asbestos-containing insulation and other asbestos-containing products when he worked as an independent construction contractor inside Alcoa's aluminum plant in Bettendorf from the 1950s through the mid-1970s. IITI, a supplier and

---

[1]Alcoa, Inc. is now known as Arconic, Inc. We refer to the defendant as "Alcoa" to maintain consistency with the caption of the case.

[2]Beverage originally filed suit in Missouri state court, naming a number of other defendants in addition to Alcoa and IITI. That case was dismissed for lack of personal jurisdiction over the defendants, and Beverage then filed this action in Iowa state court.

distributor of insulation products, supplied and installed much of the asbestos-containing insulation used in the Alcoa plant. IITI did not manufacture insulation, but it did, at Alcoa's direction, supply asbestos-containing insulation and install it at Alcoa's plant. There are no allegations that Alcoa manufactured or produced asbestos-containing products.

Both defendants moved for summary judgment based on recently-enacted Iowa Code section 686B.7(5), arguing the provision's protection against liability "for exposures from a product or component part made or sold by a third party" applied to each of them. Alcoa faced premises-type liability for failing to provide Charles with a safe environment and failing to warn him of the dangers of the asbestos dust he worked around inside its plant. IITI faced products liability claims of negligence and strict liability for its role in supplying and installing the insulation that was present in the Alcoa plant. The district court parsed the twenty-eight-word provision to conclude that the statute unambiguously granted immunity to any defendant who did not manufacture the offending asbestos-containing products. The district court traced the insulation at issue to manufacturers Johns Manville and Eagle-Pitcher, not Alcoa or IITI, and dismissed all claims against both defendants.

The court of appeals affirmed the district court's grant of summary judgment, agreeing with its interpretation of section 686B.7(5) as unambiguously granting immunity to Alcoa and IITI since the asbestos-containing insulation was manufactured by third parties. We granted Beverage's

application for further review to address the meaning of the newly enacted statute.

## II. Analysis.

Beverage does not dispute the factual basis for the district court's ruling, challenging only its legal interpretation of section 686B.7(5). We review both the grant of summary judgment and the interpretation of a statute for correction of legal error.[3] *Albaugh v. The Reserve*, 930 N.W.2d 676, 682 (Iowa 2019). "Summary judgment is appropriate 'if the record reveals only a conflict concerning the legal consequences of undisputed facts.' " *EMC Ins. Grp. v. Shepard*, 960 N.W.2d 661, 668 (Iowa 2021) (quoting *MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 882 (Iowa 2020)).

**A. Background of Asbestos Litigation.** Iowa Code section 686B.7 was passed as part of a comprehensive bill enacting tort reform in asbestos litigation, so we start with an understanding of what was going on in asbestos litigation at the time. Asbestos was once considered a "magic mineral" due to its diverse uses. Timothy B. Mueller, Comment, *Tomorrow's Causation Standards for Yesterday's Wonder Material:* Reiter v. ACandS, Inc. *and Maryland's Changing Asbestos Litigation*, 25 J. Contemp. Health L. & Pol'y 437, 440 & n.24 (2009) [hereinafter Mueller]. In the early twentieth century, it became the material of choice for industries manufacturing products that needed the heat resistance, low

---

[3]The Beverage family also raised constitutional challenges to section 686B.7(5) on appeal. But as the court of appeals noted, those claims were not raised below and were therefore not preserved for appellate consideration. We agree with the court of appeals' resolution of the constitutional challenges and do not disturb its analysis of those claims.

electrical conductivity, flexibility, and high tensile strength that asbestos provided. *Id.* at 440–41. Asbestos has been used in thousands of products ranging from thermal insulation to roofing shingles, acoustic ceiling tiles, floor tiles, air conditioning systems, fireproofing, cigarette filters, and automobile brake parts.[4] *Id.* It can be found in houses, schools, courthouses, factories, and industrial facilities throughout the United States.

But that miracle mineral is now considered "yesterday's mistake" given what is known about the harms of asbestos. *Id.* at 441. When asbestos fibers are released into the air, microscopic fibrous particles are ingested or inhaled by those in the vicinity. The fibers get stuck in the lungs, causing inflammation and irritability of the lung tissues. *Id.* at 442. Repeated exposure to high concentrations of asbestos in the ambient air over an extended period of time can result in lung scarring, pleural thickening, and tumors. *Id.* at 442 & n.36. Mesothelioma, "a rare tumor that affects the tissues lining the thoracic and abdominal cavities," was connected to asbestos exposure in the early 1960s. *Id.* at 442–43. Mesothelioma has a latency period that is measured in decades, so it is not detected until years after the exposure. *See Ganske v. Spahn & Rose Lumber Co.*, 580 N.W.2d 812, 813 n.1 (Iowa 1998) (describing mesothelioma's

---

[4]Even before becoming part of the industrial revolution,

> [a]sbestos was used in ancient times to make pottery and wicks for oil lamps. Later, it was used for textiles, including a purse for Benjamin Franklin and even a suit that enabled a person to walk through fire. Asbestos was even incorporated into paper to increase the archival quality of important Vatican documents for Pope Pius IX.

Mueller, 25 J. Contemp. Health L. & Pol'y at 440 (footnotes omitted).

latency period between twenty and forty years). There is no cure for mesothelioma, and once its symptoms appear, it is a quick but painful way to die.

American "courts first began recognizing claims against asbestos manufacturers in the early 1970s." Michael D. Kelley, Boley v. Goodyear Tire & Rubber Co., 37 Ohio N.U. L. Rev. 901, 912 (2011) [hereinafter Kelley]. Asbestos litigation gained significant traction in 1973 when the United States Court of Appeals for the Fifth Circuit affirmed a judgment holding asbestos manufacturers jointly and severally liable under a theory of strict liability to an insulation worker. *See Borel v. Fibreboard Paper Prods. Corp.*, 493 F.2d 1076, 1096 (5th Cir. 1973). Asbestos litigation in the United States exploded, and by 2002—twenty years ago now—approximately 730,000 individuals had filed lawsuits related to asbestos exposure. *See* Kelley, 37 Ohio N.U. L. Rev. at 912.

**B. Legislative Responses Bringing Tort Reform to Asbestos Litigation.** Distinct issues related to asbestos litigation have led states to enact legislation regulating asbestos lawsuits. First is the increase in "unimpaired" claims—claims filed by plaintiffs exposed to asbestos products but who were not yet sick. The primary concern raised by this trend "was the reality that such mass filings would divert the limited resources away from the victims who were suffering from cancer or other serious asbestos-related illness and into the pockets of claimants who had some physical indication of exposure but were not sick." 3 Lawrence G. Cetrulo, *Toxic Torts Litigation Guide* § 33:33, Westlaw (database updated Dec. 2021) [hereinafter *Toxic Torts Litigation Guide*]. In 2004, Ohio led the way with

asbestos tort reform by "adopt[ing] objective minimum medical criteria standards for plaintiffs filing asbestos exposure claims." Kelley, 37 Ohio N.U. L. Rev. at 914; *see also* Ohio Rev. Code Ann. §§ 2307.91–.98 (West, Westlaw through File 100, 2021–22 Gen. Assemb.). The basic premise of medical criteria legislation is to "provide for a physical impairment requirement, and necessary qualifications of the professional rendering the diagnosis, in order to file an active claim." *Toxic Torts Litigation Guide* § 33:33. The legislation precludes plaintiffs from bringing a claim unless and until they have medically documented physical impairments tied to asbestos exposure. The same legislation also tolls statutes of limitation and statutes of repose until the physical impairment has manifested so plaintiffs don't lose their claim before it begins. *Id.* Many states have followed with similar legislation.[5] Commentators describe these requirements as "significant because they prevent plaintiffs' attorneys from recruiting and filing weak or unimpaired claims and settling them in the midst of claims with serious injuries, thereby protecting the resources to compensate the plaintiffs with the most serious injuries." *Id.* & n.8 (citing Hanlon and Anne Smetak, *Asbestos Changes*, 62 N.Y.U. Ann. Surv. Am. L. 525, 568–69 (2007)). The Ohio claim prioritization legislation has reportedly cut down ninety percent of asbestos filings. *See* Kelley, 37 Ohio N.U. L. Rev. at 914–16.

---

[5]*See, e.g.*, Ga. Code Ann. §§ 51-14-1 to -10 (West, Westlaw through Act 753, 2022 Reg. Sess.) (outlining the items an exposed person can provide to show they received a medical diagnosis showing they sustained an asbestos-related injury); Kan. Stat. Ann. §§ 60-4901 to -4911 (2021); S.C. Code Ann. §§ 44-135-10 to -110 (2021); Tex. Civ. Prac. & Rem. Code Ann. §§ 16.0031, 90.001–.012 (West 2022); W. Va. Code Ann. § 55-7G-1 to -10 (West, Westlaw through 2022 First Spec. Sess., Reg. Sess., and Second. Spec. Sess., Mar. 27, 2022).

The second issue stems from the proliferation of asbestos manufacturers that have sought bankruptcy protection. Asbestos product manufacturers faced with thousands of claims by individuals exposed to their products started seeking relief in bankruptcy court. Johns Manville was the first, filing for bankruptcy protection in 1982 and ultimately creating a trust as part of those proceedings. The bankruptcy trust provided the only avenue for claimants to recover, and it limited recovery to claimants with specific medical and exposure criteria. *See Toxic Torts Litigation Guide* § 33:36. Other manufacturers quickly followed suit, and in 1994 Congress codified the Johns Manville model for bankruptcy at 11 U.S.C. § 524(g). *See id.*; *see also Construction and Application of Bankruptcy Code Asbestos Trusts, 11 U.S.C.A. § 524(g)*, 86 A.L.R. Fed. 2d 365 § 2 (2014). Section 524(g) "trusts answer for the tort liabilities of the great majority of the historically most-culpable large manufacturers that exited the tort system through bankruptcy over the past several decades." William P. Shelley et al., *The Need for Further Transparency Between the Tort System and Section 524(g) Asbestos Trusts*, 23 Widener L.J. 675, 675–76 (2014).

"As the 'main players' have exited the tort system through bankruptcy, asbestos plaintiffs have turned to targeting an ever-growing number of 'peripheral' defendants that have comparatively lower degrees of culpability for the claimant's injuries." *Id.* at 676. A common claim against "peripheral" defendants is a premises liability claim. "In a practical sense (and without excessive doctrinal scruple) premises claims are the non-product work-site claims that are left over after the claims barred by workers' compensation laws

are taken away." Patrick M. Hanlon, Developments in Premises Liability Law 2005, ALI-ABA Course of Study: Asbestos Litigation in the 21st Century, SL041 ALI-ABA 665, 668 (Westlaw 2005) [hereinafter Hanlon]. "Typically those claims have been asserted by employees of independent contractors," *id.*, similar to the claim made by Beverage against Alcoa.

Without disclosure of bankruptcy trust claim materials, these peripheral defendants are often forced to pay more than their fair share of a plaintiff's damages, and plaintiffs could receive a double recovery—once from the manufacturers' 524(g) bankruptcy trusts and again from litigation with the peripheral defendants. *Toxic Torts Litigation Guide* §33.37. Starting in Ohio in 2012, many states have passed legislation requiring plaintiffs in asbestos lawsuits to identify 524(g) trusts to which they may have a claim.[6] "The central purpose of these statutes is to provide transparency by requiring plaintiffs to disclose any trust claims in the early stages of litigation and to prevent plaintiffs from double-dipping." *Toxic Torts Litigation Guide* § 33:37. Notably, the bankruptcy trust transparency legislation does not limit a plaintiff to seeking recovery only from the manufacturers' trusts. Rather, it requires plaintiffs to disclose available funds from bankruptcy trusts to their litigation defendants to

---

[6] *See Toxic Torts Litigation Guide* § 33:37 (discussing Ohio's enactment of asbestos bankruptcy trust transparency legislation in 2012, codified at Ohio Rev. Code Ann. §§ 2307.951–.954, and the states that followed). Other states have enacted similar legislation. *See, e.g.*, Ariz. Rev. Stat. §12-782 (2022); Ga. Code Ann. § 51-14-7; Okla. St. tit. 76, §§ 81–89 (2021); Tenn. Code Ann. § 29-34-601 to -609 (2022); Tex. Civ. Prac. & Rem. Code Ann. §§ 90.051–.058; Utah Code Ann. §§ 78B-6-2001 to -2010 (2021); Wis. Stat. §802.025 (2022).

ensure plaintiffs are consistent in their claimed exposures and do not unfairly seek the same recovery from multiple sources. *See id.*

Finally, some states have enacted legislation to limit successor liability for entities acquiring the stock or assets of companies previously involved in manufacturing or selling products containing asbestos as long as the successor does not continue the asbestos-related activities of its predecessor.[7] Pennsylvania has one such statute, which was described as advancing a state's "basic governmental interest to make sure [its] corporate merger laws do not unfairly expose innocent companies to ruin solely because of a merger." *Markovsky v. Crown Cork & Seal Co.*, 107 A.3d 749, 768 (Pa. Super. Ct. 2014) (quoting Pa. S. Journal, 185th G.A., 2001 Reg. Sess., No. 63, at 1231–32 (Dec. 11, 2001)).

States have not been consistent in their asbestos litigation tort reform, enacting forms of some or all of these general areas of tort reform. Some states have expanded their legislation to cover other issues in asbestos litigation. For example, Ohio enacted legislation that limits premises liability for "take home" exposure, which often occurred when an employee who worked in a factory where asbestos dust was present brought the dust home and his or her spouse laundered the employee's dusty clothes, inhaling the dangerous asbestos particles as they flew into the air with each shake of the clothes before throwing

---

[7]*See, e.g.*, Ala. Code § 6-5-682 (2019); GA Code Ann. § 51-15-3 to -7 (2021); Ind. Code § 34-31-8-8 (2021); N.D. Cent. Code § 32-46-01 to -06 (2021); Ohio Rev. Code Ann. § 2307.97; 15 Pa. Stat. and Cons. Stat. Ann. § 1929.1 (2021); S.D. Codified Laws § 20-9-39 (2021); Wis. Stat. § 895.61 (2022); Wyo. Stat. Ann. § 1-1-134 (2021).

them into the wash. *See* Kelley, 37 Ohio N.U. L. Rev. at 915–16 (questioning whether the Ohio legislature "acted overzealously" in enacting legislation to eliminate all take-home exposure liability). Only Ohio and Kansas have enacted legislation precluding liability for this take-home exposure. *See* Kan. Stat. Ann. § 60-4905(a) (2021); Ohio Rev. Code Ann. § 2307.941(A)(1); *see also* Kelley, 37 Ohio N.U. L. Rev. at 915.

**C. The Iowa General Assembly Enacts Senate File 376.** With this background, we turn to the legislation passed by the Iowa General Assembly in 2017 to address asbestos litigation, adding chapters 686A, 686B, and 686C to the Iowa Code. *See* 2017 Iowa Acts ch. 11 (codified at Iowa Code chs. 686A–686C (2018)). The legislation is, to some extent, modeled after legislation enacted in other states described above. *See Toxic Torts Litigation Guide* § 33:37 (discussing Ohio legislation enacted in 2012, followed by legislation enacted or proposed in almost twenty additional states).

Chapter 686A is titled the "Asbestos Bankruptcy Trust Claims Transparency Act" and requires a plaintiff in an asbestos action to investigate and bring claims against asbestos bankruptcy trusts before bringing a claim against solvent defendants. Iowa Code § 686A.3(1)(*a*) (requiring plaintiffs to provide a sworn statement within ninety days of filing an asbestos lawsuit "indicating that an investigation of all asbestos trust claims has been conducted and that all asbestos trust claims that may be made by the plaintiff or any person on the plaintiff's behalf have been filed"). It also requires plaintiffs to disclose to defendants the existence of trusts against which they have made, or could make,

a claim. *Id.* § 686A.3(1)(*b*). Chapter 686A does not limit a plaintiff to only seeking recovery from asbestos manufacturers' trusts, but it does provide a mechanism to ensure a plaintiff makes claims against any relevant trusts that can be offset against any recovery in an asbestos tort action. *See* Iowa Code §§ 686A.3, .7.

Chapter 686B is titled the "Asbestos and Silica Claims Priorities Act" and prioritizes claims in favor of plaintiffs who have experienced physical impairment from asbestos exposure. Plaintiffs in Iowa, like elsewhere, have filed lawsuits before experiencing physical symptoms, recovering high-dollar verdicts based on the fear of contracting asbestos-related cancer in the future. *See, e.g., Beeman v. Manville Corp. Asbestos Disease Comp. Fund*, 496 N.W.2d 247, 254–55 (Iowa 1993) (en banc) (affirming verdict in excess of $500,000 based solely on plaintiff's fear of contracting asbestos-related cancer after being diagnosed with asbestosis). Presymptomatic claims were often the only way a plaintiff could recover damages given the long latency periods for related diseases, which meant their claims would be barred by the statute of repose if not brought until symptoms appeared. *See, e.g., Tallman v. W.R. Grace & Co.—Conn.*, 558 N.W.2d 208, 211 (Iowa 1997) (holding manufacturer of asbestos spray insulation was protected by fifteen-year statute of repose in Iowa Code § 614.1(11) (1993) against claim brought by worker exposed to asbestos).

Chapter 686B largely follows the lead of other medical criteria legislation by "provid[ing] for a physical impairment requirement, and necessary qualifications of the professional rendering the diagnosis, in order to file an active claim." *Toxic Torts Litigation Guide* § 33:33. In Iowa, "[a]n asbestos action

involving a nonmalignant condition shall not be brought or maintained in the absence of prima facie evidence that the exposed person has a physical impairment for which asbestos exposure was a substantial contributing factor." Iowa Code § 686B.4. "The prima facie showing shall be made as to each defendant and include a detailed narrative medical report and diagnosis signed under oath by a qualified physician." *Id.* At the same time, chapter 686B tolls an asbestos claim until the plaintiff has "received a medical diagnosis of an asbestos-related impairment" or discovers facts that would lead "a reasonable person to obtain a medical diagnosis." *Id.* § 686B.8(1).

Chapter 686B requires the plaintiff to include with the petition a sworn statement of the evidence that forms the basis of the claim against each defendant. *Id.* § 686B.3(2). The sworn statement must identify the worksites and employers of the exposed person; each asbestos-containing product exposed to, whether bankrupt or not; the location, manner, and duration of exposure to the identified products; and the identity of the manufacturer or seller of the specific asbestos product. *Id.* It also places limits on asbestos claims by prohibiting class action suits. *Id.* § 686B.3(5).

Titled "Procedures — limitation," Iowa Code section 686B.7 includes five separate subsections. These subsections limit use of the medical impairment evidence required to establish a prima facie claim to pretrial proceedings, *id.* § 686B.7(1)–(2); preclude discovery until a prima facie case is established, *id.* § 686B.7(3); preclude consolidation of claims for trial involving different plaintiffs absent consent of the parties, *id.* § 686B.7(4); and—the provision at issue here—

protect defendants from liability for exposures to products or component parts made or sold by third parties. This specific provision, Iowa Code section 686B.7(5), is unique; no other state legislation includes a similar limitation on liability.[8]

Finally, while not at issue in this case, chapter 686C covers successor liability. Generally, it limits the liability of any entity sued based on the actions of its predecessors to the fair market value of the assets it received in the transaction from which it became the successor, assuming the entity no longer engages in the asbestos-related activities of its predecessor. *See* Iowa Code § 686C.3. It follows legislation enacted in other states.

**D. The District Court's and Court of Appeals' Analysis of Section 686B.7(5).** This brings us to the specific issue involved in this case. Iowa Code section 686B.7(5) provides: "A defendant in an asbestos action or silica action shall not be liable for exposures from a product or component part made or sold by a third party." IITI most aptly describes the district court's methodology in interpreting the provision: it "painstakingly interpreted each term of the Statute on an almost granular level." Considering the provision word by word, the district court consulted Webster's Collegiate Dictionary to conclude this provision meant that all defendants in an asbestos case are immune from any liability caused by

---

[8]The Georgia legislature proposed adding a similar provision to its asbestos code that provided: "A product liability defendant in an asbestos action shall not be liable for exposures from a product or component part made or sold by a third party." H.B. 638, 156th G.A., 2021–22 Reg. Sess., § 3 (Ga. 2021). The legislation did not pass. *See GA HB 638*, LegiScan, https://legiscan.com/GA/bill/HB638/2021 (last visited June 6, 2022) (noting the bill died in chamber).

a product that was either made or sold by another party. Since the asbestos-containing insulation involved in this case was made by Johns Manville and Eagle-Pitcher, not by Alcoa or IITI, it was made by a third party, and Alcoa and IITI were each entitled to immunity. Under the district court's interpretation, only the manufacturer of the asbestos-containing product or component part could be civilly liable for any asbestos exposure.

The court of appeals addressed Beverage's arguments as discrete arguments, which led the court of appeals to first conclude that the word "defendant" broadly applied to every defendant in an asbestos action. Its focus on the broad application to any asbestos-action defendant led the court to discount Beverage's argument that, read as a whole, the liability-limiting provision applies to types of claims, not types of defendants. The court of appeals rejected Beverage's argument that the provision was a codification of the bare-metal defense, concluding that the legislature "could easily have so stated" if that was its intent.

The court of appeals also thought Beverage "overstate[d] the impact of section 686B.7(5). It only immunizes defendants against liability for exposure to asbestos or silica products that were 'made or sold by a third party.' It contains no general grant of immunity for 'premises owners' or 'asbestos product suppliers.' " The court's recognition that the provision did not expressly grant immunity for premises owners or asbestos product suppliers is well taken, but its conclusion misses the effect of its holding. To the contrary, the district court's analysis implicitly does just that by effectively limiting liability to the party who

both manufactured and sold the offending asbestos-containing product. Unless the premises owner happens to also manufacture asbestos-containing products, the court of appeals' opinion effectively eliminates premises liability involving asbestos. By affirming summary judgment for IITI—who admittedly supplied and sold the offending product to Alcoa—the court of appeals also eliminated all product supplier liability beyond the original manufacturer.

**E. Parties' Arguments.** The defendants focus on the beginning language of Iowa Code section 686B.7(5) that applies to a "defendant in an asbestos action," arguing the plain language provides immunity to any defendant who is not a manufacturer of the asbestos-containing product or component part. Beverage focuses on the language at the end of the provision, "product or component part made or sold by a third party," arguing that the provision limits a manufacturer's or seller's liability to that stemming from their own products or component parts but immunizes them from liability stemming from a third parties' products or component parts. In other words, the statute is a codification of the component-parts defense, or in the nomenclature of asbestos litigation, the bare-metal defense. Considered in that context, Beverage argues that the provision applies only to products liability claims, as those are the only types of claims that would be subject to a component-parts, or bare-metal, defense.

**F. Rules of Statutory Interpretation.** Our analysis turns on the meaning of section 686B.7(5). As with all cases involving statutory interpretation, we start with the language of the statute to determine what the statute means. Our first step is determining whether the meaning of the provision is ambiguous; if it is

not, we go no further and apply the unambiguous meaning of the language used in the provision. *See Com. Bank v. McGowen*, 956 N.W.2d 128, 133 (Iowa 2021) ("If the 'text of a statute is plain and its meaning clear, we will not search for a meaning beyond the express terms of the statute or resort to rules of construction.' " (quoting *In re Est. of Voss*, 553 N.W.2d 878, 880 (Iowa 1996))). If it is ambiguous, we apply canons of statutory construction to determine what the ambiguous language of the statute means. *See State v. Doe*, 903 N.W.2d 347, 351 (Iowa 2017) ("If there is no ambiguity, we apply that plain meaning. Otherwise, we may resort to other tools of statutory interpretation." (citation omitted)).

Ambiguity may arise in two ways: (1) from the specific language used in the statute or (2) when the provision is considered in the context of the entire statute or other related statutes. *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Just.*, 867 N.W.2d 58, 72 (Iowa 2015). "In other words, even if the meaning of words might seem clear on their face, their context can create ambiguity." *Id.* "[T]he determination of whether a statute is ambiguous does not necessarily rest on close analysis of a handful of words or a phrase utilized by the legislature, but involves consideration of the language in context." *State v. Richardson*, 890 N.W.2d 609, 616 (Iowa 2017) (alteration in original) (quoting *Rhoades v. State*, 880 N.W.2d 431, 446 (Iowa 2016), and considering whether a "sentence" under Iowa Code section 901.5(14) (2014) includes a restitution order by considering how "sentence" is used in related statutes and by examining section 901.5 as a whole).

The district court and court of appeals looked at each word or phrase with laser focus, starting with the meaning of the word "defendant" and working through each word of the statute in a similar fashion. But legislators do not legislate one word at a time, and statutes cannot be read with blinders, dissecting a provision one word at a time, setting that word aside, and then moving to the next to address its meaning outside the context of the other words used in the provision or how the provision fits into the greater statutory scheme. *See* Norman J. Singer & J.D. Shambie Singer, 2A Sutherland Statutory Construction § 46:5 (7th ed. rev. 2014) ("A statutory subsection may not be considered in a vacuum, but must be considered in reference to the statute as a whole . . . ."). Rather, context is critical, and context comes from "the language's relationship to other provisions of the same statute and other provisions of related statutes." *McGowen*, 956 N.W.2d at 133; *see also* Code § 4.1(38) ("Words and phrases shall be construed according to the context and the approved usage of the language . . . .").

The district court focused on defining "the defendant" as any party named as a defendant in a civil action without considering the context in which the term was used. This led to an overly broad reading of the rest of the provision, which we have cautioned against in other cases. *See, e.g., U.S. Bank Nat'l Ass'n v. Lamb*, 874 N.W.2d 112, 117 (Iowa 2016) ("We certainly understand the argument that all liens means all liens, yet the location of the phrase within a statute that appears to narrowly govern certain judgments imposes an obligation of further analysis to determine the objective meaning of the statute."); *Rolfe State Bank v.*

*Gunderson*, 794 N.W.2d 561, 565 (Iowa 2011) ("While the language used by the legislature at first blush appears to be broad, we have in many cases stated that broad and even unqualified language must be evaluated in its context."); *see also Dole v. United Steelworkers*, 494 U.S. 26, 35 (1990) ("[I]n expounding a statute, we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law . . . .") (quoting *Massachusetts v. Morash*, 490 U.S. 107, 115 (1989)). In the words of Judge Learned Hand, "Words are not pebbles in alien juxtaposition; they have only a communal existence; and not only does the meaning of each interpenetrate the other, but all in their aggregate take their purport from the setting in which they are used." *N.L.R.B. v. Federbush Co.*, 121 F.2d 954, 957 (2d Cir. 1941).

By focusing on the term "defendant," the district court and court of appeals also failed to recognize that the phrase "product or component part made or sold by a third party" has a specific meaning in the context of products liability law. The district court defined each word of the phrase separately using an ordinary dictionary definition. Had it consulted *Black's Law Dictionary*, it would have seen the phrase "component-parts doctrine" as a specific legal concept. *See* Component-Parts Doctrine, B*lack's Law Dictionary* (11th ed. 2019) (defining the doctrine as "[a] rule that the seller of a component part is liable if the component is defective and causes harm, or if the seller participates substantially in integrating the component into the final product's design and the component causes the product to be defective").

It is a "cardinal rule of statutory construction that when [the legislature] employs a term of art, it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it is taken." *Air Wis. Airlines Corp. v. Hoeper*, 571 U.S. 237, 247–48 (2014) (quoting *F.A.A. v. Cooper*, 566 U.S. 284, 292 (2012)) (concluding that "Congress meant to adopt the material falsity requirement when it incorporated the actual malice standard into the [Aviation and Transportation Security Act] immunity exception" in 49 U.S.C. § 44941(b)(2) even though the statute's use of the phrase "any disclosure made with reckless disregard as to the truth or falsity of that disclosure" could be construed to cover truthful statements made recklessly). Terms of art are not always easy to recognize, sometimes appearing as everyday words. *See, e.g., Cooper*, 566 U.S. at 291–93 (rejecting party's attempt to define term "actual damages" by looking at ordinary dictionary definition of word "actual" and word "damages" because "actual damages" is a legal term of art); *Dix v. Casey's Gen. Stores, Inc.*, 961 N.W.2d 671, 687 (Iowa 2021) ("[W]e do not ignore, nor do we believe the general assembly ignored, the specialized meaning 'safety sensitive' has developed in the context of workplace drug testing in considering its meaning under Iowa law."); *Auen v. Alcoholic Beverages Div., Iowa Dep't of Com.*, 679 N.W.2d 586, 590 (Iowa 2004) (recognizing words in a statute are to be construed based on their "established meaning in the law"). "Courts as well as advocates have been known to overlook technical senses of ordinary words—senses that might bear directly on their decisions." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 73–76 (2012)

(describing cases construing the legal terms "person," "consideration," and "escape"). "[I]f a word is obviously transplanted from another legal source, whether the common law or other legislation, it brings the old soil with it." *Id.* at 73 (alteration in original) (quoting Felix Frankfurter, *Some Reflections on the Reading of Statutes*, 47 Colum. L. Rev. 527, 537 (1947)).

Beverage invoked the term of art doctrine when he argued to the district court that "product or component part" has a specific meaning in the context of products liability law. Beverage has further expounded that argument on appeal in describing the general assembly's use of the phrase "component part" as invoking the bare-metal defense.

The court of appeals concluded that if the legislature intended to codify the bare-metal defense, it could have easily done so. Beverage counters by arguing that if the legislature intended to limit all liability except that imposed on manufacturers and sellers, it could have simply said so without enacting the detailed requirements of Iowa Code chapter 686B. Looking beyond the words of the single provision in section 686B.7(5) and considering the entire statutory scheme created by Senate File 376, Beverage has a point. Had the general assembly intended to limit asbestos liability to the manufacturers and sellers of the offending products, it could have done so in a much more straightforward manner.

**G. The Bare-Metal Defense.** To understand Beverage's argument, we must first understand the bare-metal defense. The bare-metal defense is a specific application of the component-parts defense, which provides "that a

manufacturer has no duty to warn about potential dangers from exposure to a part of its product if the manufacturer did not make or distribute the part." *Toxic Torts Litigation Guide* § 33:18. As applied in the context of asbestos litigation, "a company would not be held liable if a disease causing part was added to its 'bare metal' product," thus the name, bare-metal defense. *Id.* The bare-metal defense is controversial, and "[j]urisdictions remain split regarding the availability of the 'bare metal' defense to product manufacturers." *Id.*

> [Some] courts have adopted a bright-line rule, finding a manufacturer of a bare metal product can never be liable for injuries caused by asbestos containing materials which were not original to the product at issue. Conversely, a growing number of states have adopted a fact-specific approach, which looks to the foreseeability that asbestos containing materials would be added to a manufacturer's original bare product.

*Id.* (footnote omitted).

The United States Supreme Court recently addressed the defense under maritime law involving two Navy veterans who contracted cancer and ultimately died after they were exposed to asbestos on Navy ships. *See Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986, 991 (2019). The veterans brought failure-to-warn products liability claims against manufacturers of pumps, blowers, and turbines supplied to the Navy. *Id.* The parts manufacturers raised the bare-metal defense, arguing the Navy added asbestos insulation and asbestos parts to their "bare metal" pumps, blowers, and turbines to allow them to function aboard the Navy ships. *Id.* Recognizing "federal and state courts have not reached consensus on how to apply" the component-parts defense, the Court identified three approaches courts have taken. *Id.* at 993–94.

The "plaintiff friendly" approach adopted by the Third Circuit in the *DeVries* case used a foreseeability rule: "A manufacturer may be liable when it was foreseeable that the manufacturer's product would be used with another product or part, even if the manufacturer's product did not require use or incorporation of that other product or part." *Id.* The "defendant-friendly bare-metal defense" urged by the manufacturers provided complete protection from liability:

> If a manufacturer did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product—even if the product required incorporation of the part and the manufacturer knew that the integrated product was likely to be dangerous for its intended uses.

*Id.* Then there is a middle approach.

> [Although] foreseeability that the product may be used with another product or part that is likely to be dangerous is not enough to trigger a duty to warn[,] . . . a manufacturer does have a duty to warn when its product requires incorporation of a part and the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses.

*Id.* at 993–94. For maritime claims, the Court settled on the middle approach, concluding that

> [A] product manufacturer has a duty to warn when (i) its product requires incorporation of a part, (ii) the manufacturer knows or has reason to know that the integrated product is likely to be dangerous for its intended uses, and (iii) the manufacturer has no reason to believe that the product's users will realize that danger.

*Id.* at 995.

Justice Gorsuch dissented and would have applied the bare-metal defense urged by the manufacturers. He reasoned that "it is black-letter law that the

supplier of a product generally must warn about only those risks associated with the product itself, not those associated with the 'products and systems into which [it later may be] integrated.' " *Id.* at 997 (Gorsuch, J., dissenting) (alteration in original) (quoting Restatement (Third) of Torts: Prods. Liab. § 5, cmt. *b* (Am. L. Inst. 1997)). Justice Gorsuch equated the bare-metal defense with section 5 of the Restatement (Third) of Torts: Products Liability, which addresses the component-parts doctrine. *Id.*; *see also* Marjorie A. Shields, Annotation, *Application of "Bare Metal" Defense in Asbestos Products Liability Cases*, 9 A.L.R.7th art. 2, Westlaw (2015) [hereinafter Shields] ("The 'bare metal' defense, an affirmative defense, provides that a manufacturer has no duty to warn about potential dangers from exposure to a part of its product if the manufacturer did not make or distribute the part.").

**H. Interpretation of Iowa Code Section 686B.7(5).** With this understanding of the bare-metal defense, we return to the provision at issue: "A defendant in an asbestos action or silica action shall not be liable for exposures from a product or component part made or sold by a third party." Iowa Code § 686B.7(5). The exclusion from liability provided by section 686B.7(5) encapsulates the bare-metal defense as urged by the manufacturers in *DeVries*. The broadest view of the defense precludes liability to a manufacturer or supplier for harm caused by an integrated product into its own product. If the defendant

> did not itself make, sell, or distribute the part or incorporate the part into the product, the manufacturer is not liable for harm caused by the integrated product—even if the product required incorporation of the part and the manufacturer knew that the integrated product was likely to be dangerous for its intended uses.

*DeVries*, 139 S. Ct. at 993 (majority opinion). This is precisely what section 686B.7(5) does. It protects a manufacturer or seller from liability for exposure to an asbestos-containing product or component part made by someone else, a "third party" in the words of the statute.

We had neither adopted nor rejected the bare-metal defense with respect to asbestos claims, so the general assembly was writing on a clean slate on the specific issue of whether and how to apply the defense to asbestos claims, and it chose to apply it broadly, the "defendant friendly" version under *DeVries. See id.* Whichever formulation is used, a critical element running through the component-part doctrine is that it provides a defense for manufacturers or sellers facing products liability claims. Its very focus is on the part produced or sold by the defendant as compared to a part made or sold by a third party, limiting or eliminating liability for the manufacturer or seller whose product was not the dangerous part. *See* David Judd, *Disentangling* DeVries*: A Manufacturer's Duty to Warn Against the Dangers of Third-Party Products*, 81 La. L. Rev. 217, 233–34 (2020) (describing the question of whether a manufacturer has a duty to warn about risks posed by third-party products involving a manufacturer of component parts as a "subset of products liability cases"); Shields, 9 A.L.R.7th Art. 2 ("collect[ing] and discuss[ing] those cases in which courts have applied the 'bare metal' defense in asbestos *products liability* cases") (emphasis added)); *see also, e.g., Morgan v. Bill Vann Co.*, 969 F. Supp. 2d 1358, 1367–70 (S.D. Ala. 2013) (applying the bare metal defense under Alabama products liability law and holding it barred plaintiff's claim). The defense simply

has no application to other types of claims, such as a premises liability claim, where the basis of liability is something other than duties owed by manufacturers or sellers of products to warn others about risks associated with their products.

It may well be that the Iowa General Assembly's codification of the component-parts defense is broader than the defense described in the Restatement or at common law. And that is the general assembly's prerogative. But its use of the phrase "product or component part made or sold by a third party" is clearly a reference to the component-parts doctrine, and we cannot ignore the context in which that defense arises in determining the meaning of Iowa Code section 686B.7(5).

Our interpretation of section 686B.7(5) as codifying a type of component-parts defense to a products liability claim is confirmed by other rules of statutory construction. We first look at the rest of the statutory scheme to construe the reach of section 686B.7(5). *See Griffin Pipe Prods. Co. v. Guarino*, 663 N.W.2d 862, 865 (Iowa 2003) ("[W]e consider the context of the provision at issue and strive to interpret it in a manner consistent with the statute as an integrated whole."). Chapter 686B lays out the detailed process a plaintiff must complete in bringing an asbestos claim. A plaintiff with a nonmalignant condition must file, with his initial pleading, "a sworn information form" containing specific information, including the employer and occupation of the exposed person, the specific location and manner of each alleged exposure, and the beginning and ending dates of the exposure. Iowa Code § 686B.3(2)(*a*)–(*d*). The sworn

information form must also provide "[t]he identity of the manufacturer of the specific asbestos . . . product for each exposure" and "[t]he identity of the defendant or defendants against whom the plaintiff asserts a claim." *Id.* § 686B.3(2)(*e*)–(*f*). If any of the required information is missing, "[t]he court shall dismiss the asbestos action . . . without prejudice." *Id.* § 686B.3(5). These details, particularly those related to the exposed person's occupation, employer, and locations and manners of exposure, seem unnecessary and would serve no purpose if liability is limited to manufacturers. So too would be the requirement to identify both the manufacturers of the specific products for each exposure and to separately identify the defendants against whom the plaintiff is asserting his claim. Those are one and the same under the district court's interpretation. We generally read legislation in a manner to avoid rendering portions of a statute superfluous or meaningless. *See Little v. Davis*, 974 N.W.2d 70 2022 WL 1434657, at *4 (Iowa May 6, 2022) (rejecting interpretation of the Iowa Trust Code in a way that would make other sections never operable and relying on the "general rule of statutory construction" under which "we avoid an interpretation or application of a statute that renders other portions of the statute superfluous or meaningless").

We also consider how Iowa Code chapter 686B relates to chapter 686A. Chapter 686A requires plaintiffs bringing asbestos claims to identify bankruptcy trusts in which they may have a claim, which essentially means identifying the asbestos product manufacturers such as the two identified in this case—Johns Manville and Eagle-Pitcher. While plaintiffs are required to identify any actual or

potential trust claims, importantly, they are not limited to only bringing their claims against those trusts. Rather, the purpose behind chapter 686A is to ensure trust claims are identified to prevent a plaintiff from receiving the same recovery from both manufacturers and from other liable parties. Chapter 686A protects "peripheral," or non-manufacturer, defendants by requiring plaintiffs to collect what they can from the manufacturers' 529(g) trusts. *See* Iowa Code §§ 686A.3(1)(*a*) (requiring plaintiffs to provide an affidavit indicating they have investigated available trusts and filed claims in all applicable trusts), .3(3) (allowing the court to dismiss an asbestos action if the plaintiff fails to comply with these requirements). Amounts recovered or recoverable from 529(g) trusts are allowed as a setoff against any recovery from a defendant in an asbestos action. *See id.* § 686A.7 ("In any asbestos action in which damages are awarded and setoffs are permitted under applicable law, a defendant is entitled to a setoff or credit in the amount the plaintiff has been awarded from an asbestos trust identified in section 686A.6, subsection 1, and the amount of the valuation established under section 686A.6, subsection 2."). Chapter 686A does not, however, prevent asbestos actions against other non-manufacturing asbestos defendants. Yet if section 686B.7(5) granted the broad immunity allowed by the district court and limited liability to manufacturers, it would essentially do just that. Further, there would be little need to identify 529(g) trusts to defendants in asbestos actions if the only defendants were manufacturers, nearly all of which are protected by those trusts.

We also consider the consequences of the district court's interpretation of section 686B.7(5), which eliminates liability for defendants like Alcoa that do not sell or manufacture the offending asbestos-containing product. *See* Iowa Code § 4.6(5) (directing courts, in interpreting ambiguous statutes, to consider "[t]he consequences of a particular construction"). Premises liability claims are well-recognized claims that arose in asbestos litigation after manufacturers started seeking bankruptcy protection. *See* Hanlon at 668 ("In the late 1980s, premises cases began to be brought against electric utilities, and in the 1990s they extended to other kinds of companies, including paper mills, steel mills, and other facilities where asbestos was widely used."). At common law, Beverage could assert a claim against Alcoa based on its status as a premises owner, *see, e.g., Van Fossen v. MidAm. Energy Co.,* 777 N.W.2d 689, 696 (Iowa 2009) (distinguishing between a duty owed by a premise's owner to an independent contractor under Restatement (Second) of Torts § 413 and the lack of duty owed to the invitee's spouse who never visited the site), or as the one who retained control over Beverage's work environment, *see McCormick v. Nikkel & Assocs., Inc.,* 819 N.W.2d 368, 371 (Iowa 2012) (addressing liability of the employer of an independent contractor under Restatement (Second) of Torts § 414). Neither form of liability depended on Alcoa selling or manufacturing an asbestos-containing product. Yet the district court's interpretation of section 686B.7(5) completely eliminates both types of liability.

"We have often repeated the rule that 'statutes will not be construed as taking away common law rights existing at the time of enactment unless that

result is imperatively required.' " *Ford v. Venard*, 340 N.W.2d 270, 273 (Iowa 1983) (quoting *Porter v. Porter*, 286 N.W.2d 649, 655 (Iowa 1979) (en banc)); *see also Collins v. King*, 545 N.W.2d 310, 312 (Iowa 1996) (same). If the general assembly intended to eliminate all common law claims against all defendants except asbestos product manufacturers or sellers, it could have much more directly done so without burying it in a subsection focused on procedure. *See Sullivan v. Chi. & Nw. Transp. Co.*, 326 N.W.2d 320, 323 (Iowa 1982) (rejecting defendant's argument that legislature made sweeping changes to the railroad-grade-crossing common law based on statutory language—"A railroad crossing shall not be found to be particularly hazardous for any purpose unless the department has determined it to be particularly hazardous"—given its placement in a provision explaining the responsibilities owed by the railroad transportation division to the department of transportation (quoting Iowa Code § 307.26(5)(*b*) (1981))). If that was the purpose of section 686B.7(5), then why, in the same piece of legislation, did the general assembly enact such a complex scheme for asbestos plaintiffs to identify facts relevant to establishing the basis of liability for each defendant? Why enact the detailed provisions of chapter 686A, the Asbestos Bankruptcy Trust Claims Transparency Act, to identify liable manufacturers if the only potentially liable parties in an asbestos action are the manufacturers and sellers of the offending product? The context of the entire legislation must be considered in interpreting section 686B.7(5).

Finally, we note that section 686B.3 was amended in 2020, less than three years after the original legislation was enacted. In addition to requiring the

plaintiff to "specify[] the evidence that provides the basis for each claim against each defendant," the amendment added the following sentence to subsection 5's dismissal provision: "The court shall dismiss the asbestos action . . . without prejudice as to any defendant whose product *or premises* is not identified in the information required pursuant to subsection 2." 2020 Iowa Acts ch. 1030, § 3 (codified at Iowa Code § 686B.3(4) (2021)) (emphasis added). Allowing a defendant to be dismissed, without prejudice, if its premises is not identified is a clear reference to a premises liability claim untethered from a products liability claim. If section 686B.7(5) already excluded premises liability claims by limiting liability to only manufacturers, this would be an odd addition. If the general assembly thought it had previously excluded premises liability claims but wanted to reinstate premises liability, this would be an even odder way to create liability it had eliminated through section 686B.7(5). The revision reveals that the legislation allowed premises liability claims before the 2020 amendment, contrary to the conclusion that section 686B.7(5)'s immunity provision extinguished all premises liability claims. *See Griffin Pipe*, 663 N.W.2d at 867 (holding amendment "clarified rather than changed the existing law").

Although the district court did not have the benefit of this amendment, and we are cautious in ascribing meaning to a prior legislature based on a later legislature's actions, we cannot ignore the legislature's clear indication that premises liability claims were viable under the 2018 version of the statute. Under the district court's reading, the original statute unambiguously eliminated premises liability claims. But if that is true, did the general assembly reinstate

those claims just three years later? At a minimum, the 2020 amendment reveals an ambiguity as to whether section 686B.7(5) provides immunity to every defendant that does not manufacture or sell the asbestos-containing product or component part. *Cf. Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 132–33 (2000) (holding the Food, Drug, & Cosmetic Act did not give the Food & Drug Administration jurisdiction to regulate cigarettes and smokeless tobacco as "drug delivery devices" within the context of 21 U.S.C. § 353(g)–(h) (1994) in part by considering extensive legislation of tobacco products enacted after § 353, explaining "the meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand"). The subsequent amendment clarifies what the initial legislation already allowed: claims based on exposure to asbestos on a defendant's premises are allowed as distinct claims that do not turn on that defendant's involvement in the manufacture or sale of the offending product. *Cf. Taft v. Iowa Dist. Ct.*, 828 N.W.2d 309, 317–18 (Iowa 2013) ("When a statute is amended soon after controversy has arisen as to the meaning of ambiguous terms in an enactment, the court has reason to believe the legislature intended the amendment to provide clarification of such terms.").

Iowa Code section 686B.7(5) limits products liability claims against manufacturers or sellers to exposures from their own products or component parts but protects manufacturers or sellers from products liability claims premised on products or component parts made or sold by others. The provision does not address asbestos claims outside the context of a products liability claim,

such as a premises liability claim. But it still does real work. We had not previously addressed the bare-metal defense at common law, and as the Supreme Court explained in *DeVries*, it has been implemented in different ways. *See* 139 S. Ct. at 993. Here, the general assembly has declared the defense to be broadly available to eliminate a manufacturer's or seller's liability for exposure to asbestos-containing products or component parts made or sold by others. But it is still a products liability defense. It simply has no relevance outside of a products liability claim.

## III. Application of Section 686B.7(5) to Claims Against Defendants.

With this understanding of the provision's reach, the district court erred in granting summary judgment to Alcoa. Beverage's claims against Alcoa are based on Alcoa's actions of failing to provide Charles with a safe environment to work, either as a premises owner or as the one who controlled his work environment. These are not products liability claims that turn on who made or sold the asbestos-containing product, and the limitation of liability in section 686B.7(5) does not extend to Beverage's claims against Alcoa.

Beverage sued IITI for its role in supplying and installing the insulation at the Alcoa plant. Beverage's claims against IITI do sound in products liability, so section 686B.7(5) could apply if the claimed exposure was from someone else's product or component part, as opposed to IITI's. The district court reasoned that the insulation was made by third parties Johns Manville and Eagle-Pitcher, not IITI, so the statutory language "made or sold" protected IITI. *See* Iowa Code § 686B.7(5). The district court replaced the disjunctive "or" with the

conjunctive "and," limiting liability only to a defendant who both made and sold the offending product. By using the disjunctive "made or sold," the general assembly sought to capture those in the line of distribution for the offending product or component part—as opposed to products or component parts made or sold by third parties. Here, the summary judgment record establishes that IITI sold the insulation to Alcoa. That the insulation was made by Johns Manville or Eagle-Pitcher and only sold by IITI does not assist IITI here. The exposure was allegedly from a product sold by IITI, not a product "made or sold by a third party." The district court erred in granting summary judgment to IITI.

**IV. Conclusion.**

The district court erred in granting summary judgment to Alcoa and IITI. Judgment is reversed and the case is remanded for further proceedings.

**COURT OF APPEALS DECISION VACATED; DISTRICT COURT JUDGMENT REVERSED.**

Christensen, C.J., and Appel and McDonald, JJ., join this opinion. Waterman, J., files a dissent, in which Mansfield and McDermott, JJ., join.

#19–1852, *Beverage vs. ALCOA, Inc.*

**WATERMAN, Justice (concurring in part and dissenting in part).**

I respectfully dissent in part. I concur with the majority's reversal of summary judgment in favor of Iowa-Illinois Taylor Insulation, Inc. (IITI). IITI supplied much of the asbestos-containing insulation at issue. But the plain text of Iowa Code section 686B.7(5) (2018) bars any claim against Alcoa, Inc. Alcoa neither made nor sold asbestos or an asbestos-containing product. The summary judgment in favor of Alcoa should be affirmed.

The text of the statute is dispositive. It provides, "A defendant in an asbestos action or silica action shall not be liable for exposures from a product or component part made or sold by a third party." *Id.* "Asbestos action" is in turn defined as "a claim for damages or other civil or equitable relief presented in a civil action arising out of, based on, or related to the health effects of exposure to asbestos." *Id.* § 686A.2(2); *see id.* § 686B.2(3). This case is an asbestos action, and third parties—not Alcoa—made and sold the asbestos and asbestos-containing products. Accordingly, Alcoa is entitled to summary judgment.

I am tempted to stop here. *See Rhoades v. State*, 880 N.W.2d 431, 451 (Iowa 2016) (Waterman, J., concurring specially) ("To me, the plain language of the statute is dispositive. . . . No further analysis is required."). But I will respond briefly to some of the claims of the majority.

First, the majority asserts that Iowa Code section 686B.7(5) was meant to codify the so-called "bare metal defense." That term—"bare metal defense"—

appears nowhere in chapters 686A, 686B, or 686C. It is never mentioned in the legislative debate. Furthermore, section 686B.7(5) is a unique provision with no counterpart in any other state. Even if the purpose of a statute could somehow override plain language, and it can't, the majority has not made its case.

Second, the majority contends that Iowa Code section 686B.7(5) only applies to product liability claims, not to premises liability claims. That contention runs head-on into section 686A.2(2), which defines an "asbestos action" as "a claim for damages . . . arising out of, based on, or related to the health effects of exposure to asbestos."[9] How do our colleagues in the majority get around this plain language? *See P.M. v. T.B.*, 907 N.W.2d 522, 540 (Iowa 2018) ("When the legislature has defined words in a statute—that is, when the legislature has opted to 'act as its own lexicographer'—those definitions bind us." (quoting *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014))). They can't.[10]

---

[9]The legislature knows how to limit tort reform statutes to specify either premises liability or product liability claims, as it has done in separate statutes of repose. *Compare* Iowa Code § 614.1(11) (premises liability), *with id.* § 614.1(2A) (product liability); *see also id.* § 613.18 (codifying limitation of products liability of non-manufacturers). It has not done so here. The majority is wrong to conclude that a plain-meaning interpretation of section 686B.7(5) renders other provisions surplusage. To the contrary, the product identification and notice provisions apply when a seller, such as IITI is sued, to avoid double-dipping and to properly allocate fault among parties who made or sold the asbestos that injured the plaintiff.

[10]The majority also relies on a subsequent amendment to a different provision adding "or premises" after "product" in section 686B.3(4), governing dismissals. *See* 2020 Iowa Acts ch. 1030, § 3 (codified at Iowa Code § 686B.3(4) (2021)). They read too much into that two-word amendment when they infer that premises liability claims must not have been included in the original enactment if the legislature chose to add "or premises" to section 686B.3(4) three years later. To me, that legislative tweak is simply a belt-and-suspenders clarifying amendment, understandably motivated by the controversy exemplified in this litigation over the scope of the statutory requirements. *See Griffin Pipe Prods. Co. v. Guarino*, 663 N.W.2d 862, 867 (Iowa 2003) (holding amendment "clarified rather than changed the existing law" in response to controversy "within the legal community concerning the correct application of the original statute"). Importantly, the legislature left intact the broad definition of "asbestos action" in section 686A.2(2) as used in the immunity provision, section 686B.7(5).

Third, the majority relies on "the rule that 'statutes will not be construed as taking away common law rights existing at the time of enactment unless that result is imperatively required.' " *Ford v. Venard*, 340 N.W.2d 270, 273 (Iowa 1983) (quoting *Porter v. Porter*, 286 N.W.2d 649, 655 (Iowa 1979) (en banc)). The majority fails to mention that Iowa's legislature has codified a contrary rule for interpreting our state statutes: "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to this Code." Iowa Code § 4.2. The legislature is free to alter common law rights of action and did so in section 686B.7(5). This new statute supersedes prior common law.

Difficult cases of statutory interpretation do exist. *See Schmett v. State Objections Panel*, 973 N.W.2d 300, 304 (Iowa 2022) (per curiam) ("Statutory interpretation is not like proving math theorems, and it is sometimes difficult to come up with a neat answer that is intellectually satisfying."). This is not one of them.

Mesothelioma is a horrible disease. Reasonable people can argue that there are circumstances when even a non-seller or non-manufacturer of asbestos should be liable in an asbestos action. However, the legislature enacted a different rule in 2017, and we are obligated to follow it. *In re Det. of Geltz*, 840 N.W.2d 273, 274 (Iowa 2013) ("We must apply unambiguous operative statutory language as written without second-guessing the policy choices of the legislature.").[11] I would affirm the grant of summary judgment in favor of Alcoa.

---

[11]I agree with the determination by the court of appeals and our court's majority that the plaintiffs failed to present any constitutional challenge to the statute in district court and therefore failed to preserve error on any constitutional claim. The plaintiffs could have filed this

Mansfield and McDermott, JJ., join this concurrence in part and dissent in part.

---

action in Iowa before the effective date of this statute but failed to do so. *See* Iowa Code § 686B.9(1) ("This chapter applies to all asbestos actions and silica actions filed on or after July 1, 2017."). Charles Beverage died of mesothelioma in 2015. The plaintiffs had already sued Alcoa and other parties in Missouri state court in 2016 but ultimately voluntarily dismissed that action after Alcoa challenged personal jurisdiction there.